899 So.2d 46 (2005)
Regan PRUITT as Tutrix of the Minor Children Alexis Ledet, Rene Ledet and Olivia Ledet
v.
BRINKER, INC. d/b/a Chili's Restaurant and Liberty Mutual Insurance Company.
No. 2004 CA 0152.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
Rehearing Denied April 13, 2005.
*48 Kyle Marrionneaux, Baton Rouge, for Plaintiffs-Appellants Regan Pruitt as Tutrix of the Minor Children Alexis, Rene & Olivia Ledet.
Thomas Eppling, Julie Steed, Metairie, for Defendants-Appellees Brinker, et al.
Kirk L. Landry, Baton Rouge, for Plaintiffs-Appellants Ragan Pruitt, et al.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this workers' compensation case, plaintiffs appeal the judgment of the workers' compensation judge (WCJ) finding that the deceased, Bradford Ledet, was not in the course and scope of his employment when he was killed in an automobile accident while bringing a subordinate employee home from work. For reasons other than those given by the WCJ, we affirm.

FACTS AND PROCEDURAL HISTORY
On March 17, 2001, Mr. Ledet was working in his capacity as a manager for Brinker, Inc. d/b/a Chili's Restaurant (hereinafter referred to collectively as "Chili's") and was scheduled to close the restaurant that night along with another Chili's manager, David Sorensen. According to Mr. Sorensen, the restaurant had been busier than usual that day because it was St. Patrick's Day. During the course of the shift, two dishwashers employed by Chili's, Andre Daniels and another known only as Larry, apparently made it known to Mr. Ledet and Mr. Sorensen that they did not have rides home. Mr. Ledet offered to bring Andre home, and Mr. Sorensen brought Larry home.
After closing the restaurant to the public around midnight, Mr. Ledet and Mr. Sorensen began readying the restaurant for the next day. They left the restaurant in the early morning hours of March 18, 2001, with the intention of bringing Andre and Larry home. While on his way to Andre's house, Mr. Ledet was involved in an automobile accident and sustained fatal injuries.
Regan Pruitt filed a disputed claim for compensation against Chili's on behalf of her minor children, Alexis Ledet, Rene Ledet, and Olivia Ledet, (hereinafter referred to collectively as "plaintiffs") to recover workers' compensation death benefits for the death of their father. Chili's denied the claim, arguing that Mr. Ledet was not in the course and scope of his employment at the time of the accident. The matter proceeded to a trial on the merits before the WCJ. After considering the testimony, exhibits, and applicable law, the WCJ rendered judgment on June 23, 2003, in favor of Chili's dismissing, with prejudice, plaintiffs' claim for benefits.
In oral reasons for judgment, the WCJ found that "Chili's ... consent to having their mangers enable hourly employees to get to and from work has been implied and that it does further their business interest." The WCJ noted:
And if a supervisor is doing something that he feels is necessary in order to complete his job, complete his mission *49 for the employer, and his mission being to keep the restaurant running smoothly and regularly, and the employer knows that he's doing something that's not typically thought of as his duty and he's doing it with that purpose in mind, then I feel that it's done with consent.
Having said that, the WCJ then went on to find that because Mr. Ledet and Andre were friends, "Mr. Ledet stepped out of his manager's position at that point and became just a friend and took a friend home." Thus, the WCJ concluded, at the time of the accident, Mr. Ledet was not acting in the course and scope of his employment with Chili's.
Plaintiffs timely appealed the judgment of the WCJ, assigning the following specification of error:
The workers' compensation judge committed legal error in finding that a restaurant manager, who she found to be in the course and scope of his employment while bringing subordinate employees to their homes, was not in the course and scope of his employment when he was killed in an automobile accident because the employee he was bringing home was also his "friend." The court's factual finding that bringing employees to their homes, such as was being accomplished here, was in furtherance of the business interest of the employer cannot be legally changed depending on whether the manager may like or dislike the particular employee.

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As such, in order for an appellate court to reverse a workers' compensation judge's factual findings, it must find from the record that a reasonable factual basis does not exist for the findings of the workers' compensation judge and that the record establishes that the findings are clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
On the other hand, appellate review of a question of law is simply to determine whether the trial court was legally correct. Sumrall v. Bickham, XXXX-XXXX, p. 7 (La.App. 1 Cir. 9/8/04), 887 So.2d 73, 78. If the trial court's decision is based on its erroneous interpretation or application of law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court. Mitchell v. Gaylord Container, 2003-2762, p. 3 (La.App. 1 Cir. 10/29/04), 889 So.2d 300, 302. Thus, where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court conducts its own independent de novo review of the record. Evans v. Lungrin, 97-0541, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735. Legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial, i.e., when they materially affect the outcome and deprive a party of substantial rights. Id.
In finding that Mr. Ledet was not in the course and scope of his employment with Chili's at the time of the accident in question, the WCJ gave the following oral reasons for judgment:
The workers' compensation act is to be liberally construed in favor of coverage whenever possible. There is a very strict, however, general rule that injuries occurring to and from work are not covered. There are, as both sides have pointed out, exceptions to the to and from work rule. When the accident occurs during a trip the employee is making in the interest of his employer's *50 business or pursuant to his employer's order, now  or when the employer has interested himself in the transportation of the employee as an incident to the employment agreement or where the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied.
Quite frankly, after hearing all the evidence, I am of the opinion that Chili's or Brinker's consent to having their managers enable hourly employees to get to and from work has been implied and that it does further their business interest. I even had Mr. Sorensen actually say that until he realized later that he had said it, and I think the fact that Mr. Waters as general manager knew that managers were doing this  when you have an employee doing it for an employee, there's no problem there. An employee outside a managerial position does not have the ability to bring the employer with them on a mission. An employee giving another employee a ride home that is not in a supervisory capacity cannot push the employer's umbrella outside the premises; however, the supervisor can. And if a supervisor is doing something that he feels is necessary in order to complete his job, complete his mission for the employer, and his mission being to keep the restaurant running smoothly and regularly, and the employer knows that he's doing something that's not typically thought of as his duty and he's doing it with that purpose in mind, then I feel that it's done with consent. And I had Ms. Mack say that she knew that a general manager okayed that, specifically okayed that a manager even come in late for his time if he was helping to get an employee to work.
Now, having said that, Mr. Ledet on the night of his death or on the night of the accident, rather, stepped out of that cocoon .... I could not understand  first off, until Mr. Sorensen took the stand, I assumed all along that we just had a manager and a dishwasher there getting ready to close up. It wasn't until he took the stand that I realized we had two managers and two dishwashers there getting ready to close up. And when  I know that Mr. Ledet lives across the river in Plaquemine. At the time, Mr. Sorensen lived somewhere north of Florida out the Foster way, and both [of] the dishwashers lived on Foster, out that direction. I'm thinking to myself, well, why in the heck didn't Mr. Sorensen just take them both home? I mean, why would Mr. Ledet even come into this particular night. I had no problem with the general taking somebody home. But this particular night, why did Mr. Ledet do it when Mr. Sorensen is there going the same way and both of them live in the same direction? Why is he going to take somebody off out Foster Drive instead of get on the interstate and head across the river and go home? And Mr. Sorensen said he offered to take both of the dishwashers home that night, but Mr. Ledet said, no, I'll take Andre home, because they were friends, that he had already told him he would take him home.
Mr. Ledet stepped out of his manager's position at that point and became just a friend and took a friend home. Had it been just the two of them, I had no problem with it. But we've got somebody else actually offering to do this, and he's saying  and another manager offering to do this  and had Mr. Sorensen got hurt taking [the other dishwasher] home, I would have covered him. If [Andre] lived on the way to Plaquemine and that was the reason that they were going separate ways, I *51 would have covered it. But Mr. Ledet chose to go way out of his way, you know, for  and to me at that point, it's not to interest Chili's anymore, because he had a ride home in the interest of Chili's with Mr. Sorensen. It was because he was friends with [Andre] and was going to give him a ride.
....
But on the night in question, Mr. Ledet stepped out of his manager's shoes and stepped into just his friend's shoes and took [Andre] home, and the accident occurred.
So the court finds that it's not compensable, because at the time of the accident, Mr. Ledet was not acting in the course and scope of his employment.
Case is dismissed.
On appeal, plaintiffs maintain that the WCJ properly found that Chili's managers were acting in furtherance of Chill's interests and were in the course and scope of their employment when transporting subordinate employees home from work. Plaintiffs argue, however, that the WCJ committed legal error by finding that the friendship between Mr. Ledet and Andre meant that Mr. Ledet stepped out of his manager's position and became a friend doing a favor for another friend when he offered to bring Andre home on the night in question.
Following an exhaustive review of the record herein, we find that the WCJ committed an error of law by incorrectly considering the applicable law concerning course and scope of employment, i.e., by considering the friendship between Mr. Ledet and Andre when addressing the transportation element of course and scope. Accordingly, we will conduct a de novo review of the record and determine whether plaintiffs are entitled to workers' compensation death benefits.

COURSE AND SCOPE OF EMPLOYMENT
Under the Workers' Compensation Act, employers are responsible for compensation benefits to employees only when the injury results from an accident "arising out of and in the course of his employment." La. R.S. 23:1031. The determination of whether an injury occurred in the course and scope of employment is a mixed question of law and fact. Dean v. Southmark Const., XXXX-XXXX, p. 7 (La.7/6/04), 879 So.2d 112, 117. The requirement that an employee's injury occur "in the course of" employment focuses on the time and place relationship between the injury and the employment. Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, 192 n. 5. An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take the employee. Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La.1992). The requirement that an employee's injury "arise out of" the employment relates to the character or origin of the injury suffered by the employee and whether this injury was incidental to the employment. Williams v. Regional Transit Authority, 546 So.2d 150, 159 (La.1989).
Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course and scope of employment, and thus, are not compensable under the Workers' Compensation Act. This rule, often called the "going-and-coming rule," is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves work to return home until he resumes *52 his work. McLin v. Industrial Specialty Contractors, Inc., XXXX-XXXX, p. 4 (La.7/2/03), 851 So.2d 1135, 1140. However, this rule has been subject to a number of jurisprudentially established exceptions. For example, these exceptions have arisen: (1) if the accident happens on the employer's premises; (2) if the employee is deemed to be on a specific mission for the employer; (3) if the employer shows some interest in the employee traveling to and from work by either contractually providing transportation, or reimbursing the employee for his travel expense; (4) if the employee is hurt while traveling to and from one worksite to another; and (5) if the accident occurs in an area immediately adjacent to the work place and that area contains a distinctive travel risk to employee traveling to and from work. See Guidry v. Chevron U.S.A., Inc., 461 So.2d 625, 626 n. 2 (La.App. 1 Cir.1984).
Plaintiffs argue that as a manager for Chili's, Mr. Ledet's efforts in transporting Andre to and from work was in furtherance of his employer's interest. They maintain that it was "well known to multiple higher up levels of managerial authority within the Chili's organization" that some managers provided transportation to subordinate employees. Thus, plaintiffs assert, Mr. Ledet's action of bringing Andre home on the night in question was an incident of his employment, bringing him within the course and scope of his employment at the time of the accident. We disagree.
In Seay v. Wilson, 569 So.2d 227, 232-33 (La.App. 1 Cir.1991), writ denied, 572 So.2d 70 (La.1991), this court, citing W. Malone and H. Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation § 170, 362-63 (2d ed.1980), set forth the following considerations regarding transportation as an incident of the employment:
Whatever the manner in which the employer might have interested himself in the transportation of the employee, the transportation must be an incident of the contract of hiring. The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. This distinction between transportation furnished as an occasional convenience and transportation supplied as a part of the employer's undertaking has given rise to much confusion. In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances. For this reason, the fact that there is a prevailing practice of carrying employees back and forth is important, and the fact that such trips have been made only infrequently or irregularly has been regarded as in indication that the arrangement is one of accommodation only. However, the fact that the practice is irregular may not be sufficient to overcome other indications of an implied agreement. If the employer has forbidden the use of his vehicles for transportation and this is known to the employee, it is obvious that the latter cannot recover while he is riding in violation of orders. (Footnotes omitted).
According to the record, managers for Chili's, such as Mr. Ledet, performed ninety-five percent of their work inside the restaurant. Managers were not provided with a company vehicle and were never reimbursed for any expenses associated with the use of their personal vehicle. Although there were instances when a manager would transport a subordinate employee either to or from work, the managers *53 were under no such obligation and were neither compensated for same nor reprimanded or penalized if they refused to do so. It was strictly a personal decision made by the individual managers as to whether they would offer a ride to a fellow employee in need. The evidence was not sufficient to show that this practice of transporting subordinate employees to and from work was anything more than an arrangement of "accommodation only."
Based on our review of the record, we find that the factual situation herein falls squarely within the general rule that an employee traveling to and from work is not considered to be within the course and scope of employment. Further, it does not fit within any of the jurisprudentially recognized exceptions to that general rule. We conclude Mr. Ledet was not in the course and scope of his employment at the time of the unfortunate accident that ended his life. Thus, for reasons other than those assigned by the WCJ, we affirm the judgment below, dismissing, with prejudice, plaintiffs' claim for workers' compensation death benefits.

CONCLUSION
For the above and foregoing reasons, we affirm the WCJ's judgment and assess all costs associated with this appeal against plaintiffs-appellants.
AFFIRMED.