960 So.2d 982 (2007)
Randolph GOMON
v.
Danny MELANCON.
No. 2006 CA 2444.
Court of Appeal of Louisiana, First Circuit.
March 28, 2007.
Rehearing Denied June 28, 2007.
Scott T. Gegenheimer, Baton Rouge, Counsel for Plaintiff/Appellant Randolph Gomon.
John F. Wilkes, III, Lisa E. Mayer, Joy C. Rabalais, Lana G. Duhon, Dayna M. Edwards, Lafayette, Counsel for Defendants/Appellees Danny Melancon and D & B Framing, Inc.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
A carpenter's helper appeals a summary judgment rendered in favor of his employer finding that he was not acting in the course and scope of his employment at the time he sustained an injury and therefore his claim was not covered under the Workers' Compensation Act. Finding that the summary judgment was improperly rendered, we vacate the judgment.

FACTS AND PROCEDURAL HISTORY
At issue in this appeal is whether the claimant, Randolph Gomon, was in the course and scope of his employment at the time of his injury. Gomon worked as a carpenter's helper for D & B Framing, Inc. At the time of the accident sued upon, Gomon was riding in a vehicle driven by his supervisor, Mark Mayers.[2] Attached to Mayers' vehicle was a trailer containing tools that Gomon, Mayers, and other workers making up Mayers' "crew" used to perform work framing a house in Lafayette, Louisiana. The tool trailer was owned by Danny Melancon, the owner of D & B Framing, Inc.[3]
D & B Framing, Inc.'s primary business activity is the framing of residential houses. Melancon also held an ownership interest in another business called Danny Melancon, L.L.C., which primarily performed supervisory and some contracting work. Generally, D & B Framing, Inc. performed work in the parishes of Livingston, Ascension, and East Baton Rouge; however, when work could not be found in those parishes, Melancon contracted for *984 the company to frame two houses in Lafayette. Although both Gomon and Mayers worked at the Lafayette job site, Danny Melancon, L.L.C., not D & B Framing, Inc., employed Mayers as the job supervisor.
On November 17, 2005, while following Melancon to his bank in Denham Springs, Louisiana, a vehicle ran a stop sign and collided with Mayers' vehicle, injuring Gomon. Gomon filed a claim for workers' compensation based on the accident, naming Melancon as his employer in the claim. Melancon and D & B Framing, Inc. filed an answer to the claim, denying liability for the payment of workers' compensation benefits to Gomon. Thereafter, the parties filed cross motions for summary judgment seeking a determination of whether Gomon was in the course and scope of his employment at the time he was injured. Following a hearing on the cross motions, the workers' compensation judge (WCJ) granted Melancon and D & B Framing, Inc.'s motion for summary judgment, denied the motion filed by Gomon, and dismissed Gomon's claim with prejudice.

ASSIGNMENT OF ERROR
In the sole assignment of error presented in this appeal, Gomon submits that the WCJ's finding that he was not in the course and scope of his employment at the time he was injured was contrary to the law and evidence.

STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Fagan v. LeBlanc, 04-2743, p. 5 (La.App. 1st Cir.2/10/06), 928 So.2d 571, 574. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Inferences drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Hill v. Shelter Mutual Insurance Company, 05-1783, p. 3 (La.7/10/06), 935 So.2d 691, 693.
Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Young v. Capitol Concrete Products, Inc., 02-1822, p. 3 (La.App. 1st Cir.6/27/03), 858 So.2d 513, 516, writ denied, 03-2095 (La.11/7/03), 857 So.2d 498. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Jones v. State Board of Elementary and Secondary Education, 05-0668, p. 5 (La.App. 1st Cir.11/4/05), 927 So.2d 426, 429.
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Sunrise Construction and Development Corporation v. Coast Waterworks, Inc., 00-0303, p. 4 (La.App. 1st Cir.6/22/01), 806 So.2d 1, 3, writ denied, 01-2577 (La.1/11/02), 807 So.2d 235.

APPLICABLE SUBSTANTIVE LAW
It is a well-settled principle that the provisions of the workers' compensation scheme should be liberally interpreted in favor of the worker. Bynum v. Capital City Press, Inc., 95-1395, pp. 5-6 (La.7/2/96), 676 So.2d 582, 586. Under the Workers' Compensation Act, employers are responsible for compensation benefits *985 to employees only when the injury results from an accident "arising out of and in the course of his employment." La. R.S. 23:1031. The determination of whether an injury occurred in the course and scope of employment is a mixed question of law and fact. Dean v. Southmark Construction, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117.
Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course and scope of employment, and thus, are not compensable under the Workers' Compensation Act. This rule, often called the "going-and-coming rule," is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves work to return home until he resumes his work. Pruitt v. Brinker, Inc., 04-0152, p. 6 (La. App. 1st Cir.2/11/05), 899 So.2d 46, 51-52, writ denied, 05-1261 (La.12/12/05), 917 So.2d 1084. However, this rule has been subject to a number of jurisprudentially established exceptions, such as when the employee is deemed to be on a specific mission for the employer, because he was making a trip in the interest of his employer's business or pursuant to his employer's order; or if the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied. Brown v. Coastal Construction & Engineering, Inc., 96-2705, p. 3 (La.App. 1st Cir.11/7/97), 704 So.2d 8, 10.

DISCUSSION
In support of the cross motions for summary judgment, the parties introduced five joint exhibits, which included the depositions of Gomon, Mayers, and Melancon. It is undisputed that Gomon was employed by D & B Framing, Inc. to work as a carpenter's helper on a job in Lafayette. The typical workday was Monday through Friday, from 7:00 a.m. to 3:30 p.m.; however, the accident sued upon occurred at approximately 5:30 p.m. in Denham Springs, Louisiana. There was conflicting testimony presented regarding why Gomon was present at the place and time of the accident.
At the time of the accident, Mayers was following Melancon to Melancon's bank. Gomon was a passenger in Mayers' vehicle. Mayers and Gomon testified that they were traveling to Melancon's bank so that Melancon could deposit a check he had received from the general contractor to cover the payroll checks that were disbursed to the employees that day. Gomon admitted not knowing why Mayers had to accompany Melancon to the bank, but Mayers indicated that he wanted to make sure there were sufficient funds available to cover his paycheck on presentment. Mayers and Gomon both admitted that they planned to take advantage of the opportunity to cash their paychecks while at the bank.
On the other hand, Melancon stated that the reason why they were going to his bank was so he could assist Mayers in getting Mayers' paycheck cashed. Melancon testified that he had no intention of depositing the check he had received from the general contractor. Instead, he explained that his wife had established a line of credit to cover payroll for his employees and that he planned to give the general contractor's check to his wife, who would deposit it on the following Monday.
In looking at the facts that led to Gomon being present in the Mayers' vehicle at the time the accident occurred, both Gomon and Mayers testified that they resided near each other (Gomon stated "within walking distance") and that by traveling together, they could share the expense of traveling to Lafayette for the job. Melancon acknowledged that he was aware and did not object to Mayers' travel arrangements with Gomon, but stated that he did *986 not suggest or negotiate such arrangements. Gomon testified that the transportation provided by Mayers was beneficial to him because his vehicle was not operating properly, but there were some days that he used his own vehicle to travel to work.
Gomon and Mayers also testified that at the time of the accident, Mayers was hauling the tool trailer that belonged to Melancon and that contained the equipment and tools that were being used to perform the framing work in Lafayette. They further testified that although Melancon rented a house in Church Point, Louisiana for the workers to reside in, the workers, including themselves, usually returned home on the weekends. Since no one typically stayed at the rental house on the weekends, Mayers would haul the trailer to either his or Gomon's home for safekeeping over the weekend. Gomon testified that one time Mayers left the tool trailer at the rental house because one of the workers had spent the weekend at the house, but later some items from the tool trailer were discovered to be missing. After that occasion, Gomon testified that Mayers always hauled the tool trailer with him when he returned home for the weekend.
All three men stated in their depositions that on the date of the accident, Gomon and Mayers changed a flat tire on the trailer prior to the accident. Melancon further testified that Mayers had contacted him on previous occasions requesting parts to repair something that had broken on the trailer while Mayers was hauling the trailer to and from Lafayette. Following the accident, Mayers testified that the trailer and some equipment contained in the trailer had sustained some slight damage, but the vehicle Mayers drove was damaged beyond use. As a result, Melancon transported the trailer to his home for storage over the weekend, and he later rented a pickup truck for Mayers to haul the tool trailer back to Lafayette.
The "course of employment" aspect of La. R.S. 23:1031(A) is a fact-dependent inquiry into the particular time, place, and employment activity at issue in a given case. Harris v. State ex rel. Dept. of Public Safety & Corrections, 05-2647, p. 11 (La.App. 1st Cir.11/3/06), 950 So.2d 795. Based on our de novo review of the record before us, we find that the WCJ improperly rendered summary judgment in this matter as it is clear that genuine issues exist regarding the material fact of whether Gomon was in the course and scope of his employment with D & B Framing, Inc. at the time he was injured. The WCJ inappropriately weighed the evidence and made a finding of fact, thereby substituting the motion for a trial on the merits. Considering the evidence contained in the record, we find reasonable minds could differ regarding the determination of whether Gomon was on a special mission for his employer at the time of the accident, and thus, in the course and scope of his employment. Accordingly, the summary judgment must be vacated.

CONCLUSION
For the foregoing reasons, we find that the WCJ improperly rendered summary judgment in this matter finding Randolph Gomon was not in the course and scope of his employment at the time of the accident sued upon. We vacate the judgment rendered and remand this matter to the Office of Workers' Compensation Administration for further proceedings. All costs of this appeal are cast to Danny Melancon and D & B Framing, Inc.
VACATED AND REMANDED.
PARRO, J., dissents and assigns reasons.
*987 PARRO, J., dissenting.
At the time of the accident, Gomon was a guest passenger in the vehicle owned and driven by Mayers, and they had ended their work day and were returning to their respective homes for the weekend. Nonetheless, Gomon urged that he was on a specific mission for his employer, D & B Framing, Inc., by virtue of the fact that Mayers, who was an employee of Danny Melancon, L.L.C., was pulling a trailer containing tools that were used by the crew that worked under the supervision of Mayers. The majority found that the WCJ inappropriately weighed the evidence in considering the motion for summary judgment by D & B Framing, Inc. and Melancon. Finding that reasonable minds could differ regarding the determination of whether Gomon was on a special mission for his employer at the time of the accident, the majority concluded that a genuine issue of material fact existed as to whether Gomon was in the course and scope of his employment with D & B Framing, Inc. at the time he was injured.
Whatever the manner in which the employer might have interested himself in the transportation of the employee, the transportation must be an incident of the contract of hiring. Although an employer might occasionally provide transportation to accommodate an employee, that fact is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. See Pruitt v. Brinker, Inc., 04-0152 (La.App. 1st Cir.2/11/05), 899 So.2d 46, 52. The distinction between transportation furnished as an occasional convenience and transportation supplied as a part of the employer's undertaking has given rise to much confusion. Pruitt, 899 So.2d at 52.
Although Mayers was Gomon's supervisor, he was employed by Danny Melancon, L.L.C. Neither Mayers' employer nor Gomon's employer provided Mayers with a company vehicle or reimbursed Mayers for any expenses associated with the use of his personal vehicle in commuting from Lafayette to his home in Denham Springs on weekends. Instead, these expenses were shared by Mayers and Gomon. Mayers was under no obligation to bring Gomon to Denham Springs when he traveled home on the weekend. He was neither compensated by his employer or Gomon's employer for doing so nor reprimanded or penalized if he refused to do so. It was strictly a personal decision made by Mayers as to whether he would offer a ride to a member of his crew who was in need. Considering the lack of proximity to the job location, the time in question, and the nature of the activity involved in this case, I find Gomon failed to produce factual support sufficient to establish that Mayers' practice of transporting him from work to his home on the weekends was anything more than an arrangement of "accommodation only." His failure to do so shows the lack of a genuine issue of material fact. See LSA-C.C.P. art. 966(C)(2). Under the circumstances of this case, the fact that Mayers may have been pulling a tool trailer that belonged to "Melancon" at the time of the accident does not justify a contrary finding. Accordingly, I find that this factual situation falls squarely within the general rule that an employee traveling to and from work is not considered to be within the course and scope of employment. Further, it does not fit within any of the jurisprudentially recognized exceptions to that general rule. Accordingly, I respectfully dissent.
NOTES
[2] Mayers' father owned the vehicle driven by Mayers, a pickup truck.
[3] Melancon testified in his deposition that his wife owned D & B Framing, Inc., but when asked if she was the sole shareholder or whether he was a shareholder in the company as well, Melancon responded, "I don't know how they have got it set up." He acknowledged that his wife was president of the company and he managed it for her.