WHIPPLE, J.
 

 |2This matter is before us on appeal by plaintiffs, Altheia LeBlanc, individually and on behalf of the minor child, Tynari LeBlanc; Eula LeBlanc; Cheryl Miller, individually and on behalf of the minor children, Kim Nicolas and Shenita Nicolas; and Christine Robinson, individually and on behalf of the minor children, Eric Robinson and De’Eric Robinson (hereinafter referred to collectively as “plaintiffs”), from the trial court’s grant of summary judgment in favor of the defendant, Bouch-ereau Oil Company, Inc. (“Bouchereau Oil”). For the following reasons we affirm the judgment.
 

 FACTUAL BACKGROUND
 
 [1]
 

 On July 23, 2006, at approximately 8:00 p.m., defendant, Edward LeBlanc (“Le-Blanc”), who had been drinking alcohol and whiskey and smoking crack cocaine earlier in the day, returned to the home of his sister, Altheia LeBlanc (one of the plaintiffs herein) where he was “staying.” After an argument with Altheia about her refusal to allow him into the mobile home without first removing his muddy shoes, LeBlanc left the home, rode his bicycle to the defendant’s Chevron station approximately one block away, and purchased fifty cents’ worth of gasoline, which he placed in a two-liter coke bottle. He returned to his sister’s home approximately thirty minutes later and knocked on the door. After Altheia opened the door to her home, Le-Blanc threw gasoline on the floor, then onto her, and ignited a cigarette lighter, setting Altheia and the mobile home on fire. LeBlanc then ran away.
 

 LeBlanc’s mother, Altheia’s minor son, Altheia’s two minor cousins, and LeBlanc’s two minor nephews were also present in the home and were forced to flee the home to escape the flames. As a result of Le-Blanc’s actions, Altheia ^received third-degree burns on 55% of her body. Le-Blanc’s mother, Eula LeBlanc, received second and third-degree burns to her legs and arm while trying to escape through the doorway. The five minor children escaped through a window, but did not suffer physical injuries.
 
 [2]
 

 
 *155
 
 On December 17, 2006, plaintiffs filed suit against Bouchereau Oil, the owner of the Chevron station where LeBlanc purchased the gasoline, and LeBlanc. Plaintiffs’ claims against Bouchereau Oil were essentially that the Chevron attendant employed by Bouchereau Oil was negligent in selling gasoline to LeBlanc while he was in an intoxicated state.
 

 In response, Bouchereau Oil filed a motion for summary judgment, essentially contending that a seller of gasoline does not have a duty to assess the competency of an adult customer before allowing him to purchase gasoline. The matter was set for hearing before the trial court on March 24, 2008. On March 81, 2008, the trial court issued reasons for judgment in support of its finding that the Chevron attendant did not have a duty to assess the competency of a gasoline purchaser prior to a sale and that Bouchereau Oil was accordingly entitled to summary judgment in its favor as a matter of law. A written judgment dismissing plaintiffs’ claims against Bouchereau Oil, with prejudice, was signed by the trial court on April 14,2008.
 

 Plaintiffs appeal, contending that the trial court erred as a matter of law in: (1) finding that a vendor of gasoline is not obligated to discover the “obvious incompetence” as a result of intoxication of a gasoline purchaser; and (2) failing to find that Bouchereau Oil’s own safety policy established a duty to assess the competence of a purchaser of gasoline.
 

 I ¿DISCUSSION
 

 A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. It should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, the movant’s burden does not require him to negate all essential elements of the adverse party’s claim. Rather, the movant need only show that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2);
 
 Asberry v. The American Citadel Guard, Inc.,
 
 2004-0929 (La.App. 1st Cir.5/6/05), 915 So.2d 892, 894. If, however, the mov-ant fails in his burden to show an absence of factual support for one or more of the elements of the adverse party’s claim, the burden never shifts to the adverse party, and the movant is not entitled to summary judgment.
 
 Asberry v. The American Citadel Guard, Inc.,
 
 915 So.2d at 894.
 

 Appellate courts review summary judgment
 
 de novo
 
 under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Granda v. State Farm, Mutual Insurance Company,
 
 2004-2012 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 701. Material facts are those that potentially insure or preclude recovery, affect the litigant’s success, or determine the outcome of a legal dispute. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to |sthe case.
 
 Gomon v. Melancon,
 
 2006-2444 (La.App.
 
 *156
 
 1st Cir.3/28/07), 960 So.2d 982, 984,
 
 writ denied,
 
 2007-1567 (La.9/14/07), 963 So.2d 1005.
 

 Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of LSA-C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element).
 
 Cusimano v. Wal-Mart Stores, Inc.,
 
 2004-0248 (La.App. 1st Cir.2/11/05), 906 So.2d 484, 487-488. A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability.
 
 Mathieu v. Imperial Toy Corporation,
 
 94-0952 (La.11/30/94), 646 So.2d 318, 326.
 

 The threshold question in a duty-risk analysis is whether the defendant owed a duty to the plaintiff. Whether a duty is owed is a question of law.
 
 Bezel v. Original Library Joe’s, Inc.,
 
 2001-1586 (La.App. 1st Cir.11/8/02), 838 So.2d 796, 800. Simply put, the inquiry is whether a plaintiff has any law — -statutory, jurisprudential, or arising from general principles of fault — to support his or her claim.
 
 Boland v. West Feliciana Parish Police Jury,
 
 2003-1297 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 815,
 
 writ denied,
 
 2004-2286 (La.11/24/04), 888 So.2d 231. Where no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment.
 
 Griffin v. Shelter Insurance Company,
 
 2002-2628 (La.App.6 1st Cir.9/26/03), 857 So.2d 603, 605,
 
 writ denied,
 
 2003-2992 (La.1/16/04), 864 So.2d 635.
 

 The determination of whether a particular risk of harm is reasonable is also a matter wed to the facts of the case. In general, it is improper to characterize a risk as unreasonable without considering the surrounding circumstances.
 
 Griffin v. Shelter Insurance Company,
 
 857 So.2d at 605. A court must determine whether the risk is unreasonable vis-á-vis the particular plaintiff involved. In doing so, it is appropriate to consider any contractual obligations owed by the plaintiff to the defendant with respect to the particular risk that resulted in harm.
 
 Griffin v. Shelter Insurance Company,
 
 857 So.2d at 605. The status of the plaintiff is a factor to be considered in the fact-specific determination of whether a risk is unreasonable.
 
 Griffin v. Shelter Insurance Company,
 
 857 So.2d at 605-606.
 

 In support of its claim that summary judgment was properly granted herein, Bouchereau Oil contends that there is no reported decision in the State of Louisiana that holds a gas station attendant liable for selling gasoline to a person who uses that gasoline in an intentional assault. Bouch-ereau Oil further contends that the duty plaintiffs seek to impose herein would improperly require gas station attendants to assess the sobriety of each and every patron who came into the station to purchase gasoline.
 

 In opposition to Bouchereau Oil’s arguments in favor of summary judgment on the issue of whether a duty exists, plaintiffs counter that
 
 Jones v. Robbins, 289
 
 So.2d 104 (La.1974), recognized and established a duty on behalf of a vendor to refuse to sell gasoline to an “incompetent
 
 *157
 
 person” and that LeBlanc, who purchased the gasoline while in an intoxicated state, should be considered “incompetent” in determining the duty owned by the defendant. We find no merit to plaintiffs’ argument.
 

 |7In
 
 Jones,
 
 where a station attendant allowed a six-year-old to purchase gasoline that was ultimately used to create a fire causing burns to her four-year-old sister, the Court found a duty was owed by the vendor of gasoline “not to place it in the hands of those who, by reason of age or other disabilities, are unaware of the special propensities of the material, and of precautionary measures which must be taken when using or storing it.”
 
 Jones v. Robbins,
 
 289 So.2d at 107. The Court then determined that the act of placing gasoline in the hands of “an incompetent child earned with it full realization, or at least a requirement to realize, that the conduct of the small child with the dangerous substance involved an unreasonable risk of harm to others ... [particularly ... the expectation of child group play.”
 
 Jones v. Robbins,
 
 289 So.2d at 107.
 

 On review, we do not find that any duty recognized in
 
 Jones
 
 applies herein. As set forth in
 
 Jones,
 
 the duty of a vendor not to place gasoline in the hands of an incompetent or small child of tender age, as recognized under the particular circumstances therein, exists to protect small children, inasmuch as a six-year-old would have little reason to understand the dangerous propensities of gasoline and no recognition or ability to “treat gasoline differently than they would water, milk or other liquids[,] which have no dangerous propensities for exploding or becoming ignited.”
 
 See Jones v. Robbins,
 
 289 So.2d at 107.
 

 In the instant case, LeBlanc’s testimony clearly establishes that he acted intentionally when he purchased and later used the gasoline to set his sister and her home on fire, after dousing her with the gasoline. Notably, the duty discussed in
 
 Jones
 
 has not been extended to encompass the sale of gasoline to an adult, who is aware of its dangerous propensities, like LeBlanc. Importantly, the duty set forth in
 
 Jones
 
 was not extended to circumstances involving the sale of gasoline to a twelve-year-old child.
 
 See Daniels v. Datiphine,
 
 557 So.2d 1062, 1066 (La.App. 2nd Cir.1990),
 
 writ denied,
 
 561 So.2d 100 (La.1990) (where the court |8found “a substantial difference in selling gasoline to a six-year-old, as in
 
 Jones v. Robbins,
 
 and selling [gasoline] to a [twelve]-year-old .... [who] is considerably more mature and experienced than a six-year-old, and can hardly be referred to as an incompetent.”).
 

 Thus, we find the trial court correctly determined that under the undisputed facts of this case, plaintiffs would be unable to satisfy their evidentiary burden of proof at trial, as there was no duty owed or imposed, as a matter of law — either statutory, jurisprudential, or arising from general principles of fault — upon Boucher-eau Oil to protect against these acts by LeBlanc.
 

 Further, to the extent that plaintiffs argue that Bouchereau Oil had a duty not to allow LeBlanc to purchase gasoline because he was “visibly intoxicated” and thereby “incompetent,” we note that the Chevron attendant, Ursula Landry White, specifically testified that on the day in question, LeBlanc came into the station and bought between fifty and seventy cents’ worth of gas. She stated that he did not appear “drunk” or intoxicated and that she had never seen him in a “drunk” or intoxicated state. Mrs. White testified that LeBlanc came in, laid his money on the counter, asked for gas, and “ran out.” She stated that from the counter where she works, she could not observe LeBlanc at the pump where he was pumping gas,
 
 *158
 
 but could only see the top of his head, LeBlanc likewise testified that he did not talk to Mrs. White. Rather, because he was “mad,” he did not want to talk to her, and simply got the gas and “left right out” and “took off.”
 

 In addition, the videotape of Mr. Le-Blanc paying for the gasoline at the Chevron station shows no visible or discernible evidence of impairment. Thus, although Mrs. White admitted she was trained not to sell gasoline to someone who appeared to be drunk, the only showing on this issue is Mrs. White’s testimony that based on her observations, LeBlanc did not appear to be “drunk.” Thus, even if this court were to determine that Bouehereau Oil had a duty to not 19sell gasoline to a person who was visibly intoxicated, plaintiffs have failed to come forward with any evidence to show that they could satisfy their evi-dentiary burden of proof on this issue at trial or that the defendant breached any duty owed herein. Further, given the evidence of record and the undisputed facts herein, we find nothing in the record before us to show any duty owed on the part of Bouehereau Oil, under the undisputed facts, for this particular risk of harm.
 
 [3]
 
 Moreover, there is nothing on the record before us to show an unreasonable risk of harm to plaintiffs was created by the sale of gasoline to LeBlanc.
 
 [4]
 

 See Daniels v. Dauphine,
 
 557 So.2d at 1066.
 

 CONCLUSION
 

 On the record before us, we find no error in the trial court’s conclusion that under the undisputed facts, Bouehereau Oil was entitled to judgment in its favor as a matter of law. Thus, we affirm the April 14, 2008, judgment of the trial court. Costs of this appeal are assessed to the plaintiffs/appellants.
 

 AFFIRMED.
 

 DOWNING, J. dissents.
 

 [1]
 

 . This section contains a recitation of the undisputed facts.
 

 [2]
 

 . Plaintiffs subsequently amended their petition to include as plaintiffs, two additional minors who are second cousins of Altheia and
 
 *155
 
 who allegedly were also present at the time of the incident.
 

 [3]
 

 . Although Raymond Chapman, LeBlanc's uncle, testified that he spoke to LeBlanc shortly before he purchased the gasoline and that he appeared to be “drunk,” as per the uncontradicted evidence, Mrs. White’s testimony is that LeBlanc did not speak to her.
 

 [4]
 

 . Given our determination that Bouehereau Oil had no legal duty herein, we further note that even if there was a legal duty that could be imposed we find that any such duty could not encompass the risks of LeBlanc’s actions herein.