DORMAN O. CROWE
v.
WINN-DIXIE OF LOUISIANA, INC.
No. 2009 CA 0647.
Court of Appeals of Louisiana, First Circuit.
February 12, 2010.
Not Designated for Publication.
C.T. WILLIAMS, Jr., CARL T. CONRAD, Attorneys for Defendant/Third Party Plaintiff/Appellant, Warren/Sherer, Inc.
JERRY L. SAPORITO, EDWARD T. HAYES, Attorneys for Defendant/Appellee, TDK Corporation.
Before: CARTER, C.J., GUIDRY and PETTIGREW, JJ.
CARTER, C. J.
Warren/Sherer, Inc., appeals a judgment granting summary judgment and dismissing its third party claims against TDK Corporation of Japan ("TDK").[1]

FACTS AND PROCEDURAL HISTORY
This appeal arises from an outbreak of Legionnaire's Disease that occurred in Bogalusa, Louisiana, in 1989. The bacterial source was determined to be an automatic produce mister (hereafter "the mister") contained in a refrigerated produce display case in the Winn-Dixie grocery store in Bogalusa. Numerous plaintiffs filed suit against Winn-Dixie and others, including Warren/Sherer, which sold the mister to Winn-Dixie. The plaintiffs settled their claims against Winn-Dixie. The plaintiffs' claims against Warren/Sherer were tried in 1993 and ultimately settled. Litigation of the remaining claims continued.
This appeal concerns a third party demand by Warren/Sherer against TDK, the manufacturer of the transducer/nebulizer incorporated into the mister. The transducer/nebulizer is the electrical component that vaporizes water to create a mist. As described by counsel for TDK, the transducer/nebulizer rests in a water reservoir, vibrates, and breaks down the water molecules, thus creating the mist. Essentially, Warren/Sherer's third party demand contends that the transferred heat from the transducer/nebulizer raised the water temperature in the reservoir to a level that contributed to increased Legionella bacteria growth.
Nineteen years after the third party demand was filed, the trial court granted TDK's motion for summary judgment and dismissed the claims against TDK. Warren/Sherer now appeals.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. It should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, the movant's burden does not require him to negate all essential elements of the adverse party's claim. Rather, the movant need only show that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966C(2); LeBIanc v. Bouchereau Oil Co., Inc., 08-2064 (La. App. 1 Cir. 5/8/09), 15 So.3d 152, 155, writ denied, 09-1624 (La. 10/16/09), 19 So.3d 481. If, however, the movant fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the movant is not entitled to summary judgment. LeBIanc, 15 So.3d at 155.
Appellate courts review summary judgment de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Granda v. State Farm Mutual Insurance Company, 04-2012 (La. App. 1 Cir. 2/10/06), 935 So.2d 698, 701. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Gomon v. Melancon, 06-2444 (La. App. 1 Cir. 3/28/07), 960 So.2d 982, 984, writ denied. 07-1567 (La. 9/14/07), 963 So.2d 1005; LeBIanc, 15 So.3d at 155.

DISCUSSION
The Louisiana Product Liability Act ("LPLA"), which is set forth in Louisiana Revised Statutes 9:2800.51 et seq., establishes the exclusive theories of liability for manufacturers for damages caused by their products. See LSA-R.S. 9:2800.52; Haley v. Wellington Specialty Ins. Co., 44,014 (La. App. 2 Cir. 2/25/09), 4 So.3d 307, 311, writ denied, 09-0532 (La. 4/17/09), 6 So.3d 800; Seither v. Winnebago Industries, Inc., 02-2091 (La. App. 4 Cir. 7/2/03), 853 So.2d 37, 40, writ denied, 03-2797 (La. 2/13/04), 867 So.2d 704. Specifically, the LPLA provides that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." LSA-R.S. 9:2800.54A. A product may be deemed "unreasonably dangerous" due to its composition or construction, its design, the manufacturer's failure to provide adequate warning, or the product's failure to conform to an express manufacturer's warranty. LSR.S. 9:2800.54B. It is the burden of the claimant seeking recovery to prove that the product is unreasonably dangerous. LSA-R.S. 9:2800.54D. The existence of a vice or defect in a product will not be inferred on the sole fact that an accident occurred. Jaeger v. Automotive Casualty Ins. Co., 95-2448 (La. App. 4 Cir. 10/9/96), 682 So.2d 292, 298, writ denied, 96-2715 (La. 2/7/97), 688 So.2d 498; Ashley v. General Motors Corp., 27,851 (La. App. 2 Cir. 1/24/96), 666 So.2d 1320, 1322.
Warren/Sherer's third party complaint alleged that TDK was liable under the LPLA because its product was: 1) unreasonably dangerous in construction and/or composition at the time it left TDK's control because of inherent deviation from safe standards; 2) unreasonably dangerous in design at the time of manufacture because there existed feasible alternative designs that would not have caused the alleged damages; and 3) unreasonably dangerous by virtue of TDK's failure to warn purchasers and users of the risks inherent in, and associated with, the reasonably anticipated use of its product.
TDK moved for summary judgment contending that, after years of discovery, there was no evidentiary support for Warren/Sherer's claims. In support of its motion, TDK submitted discovery documents wherein TDK requested and Warren/Sherer identified the expert witnesses that Warren/Sherer contended supported its claims. Warren/Sherer indicated its expert witnesses were Dr. Carl Fliermans (expert microbiologist), Dr. Gary Bakken (expert industrial engineer), and William Acorn (expert engineer), all of whom had been witnesses for Warren/Sherer during the trial of plaintiffs' demands against it.
In further support of its motion for summary judgment, TDK attached excerpts of the deposition testimony of the expert witnesses identified by Warren/Sherer. Dr. Fliermans testified that he had not been asked to render an opinion regarding the mister. Dr. Bakken opined that:
As it existed at the time Winn Dixie took ownership of the case, the humidifying device did not present an unreasonably dangerous condition to either Winn Dixie employees or Winn Dixie customers. It's only upon activation, use of the device that it had the potential for creating that condition. And then only if the device was improperly cleaned with regard to bacteriology issues.
Finally, Acorn testified that he did not believe nebulizers are unreasonably dangerous in design if they are kept clean. Acorn concluded that he did not believe the mister was unreasonably dangerous.
Warren/Sherer opposed the motion for summary judgment, contending that the prior litigation had considered the misting machine as a whole, but had not specifically focused on the transducer/nebulizer. Further, Warren/Sherer offered the affidavit of Larry Townsend, a mechanical and environmental engineer.[2] Townsend attested that in his opinion, the ultrasonic transducers were defective in application by adding excess heat to the water in the reservoir tank, thus elevating the water temperature closer to the optimal range for Legionella bacteria growth. Townsend concluded that:
the ultrasonic transducers were defective in this application by adding excess heat to the water in the tank ... a design that did not increase the water temperature above ambient would have had less chance to contribute to Legionella bacteria growth. A design that incorporated a closed pipe supplying a misting nozzle that discharged into the plastic discharge pipes would have provided a mister without the water reservoir, which could harbor and encourage Legionella bacteria growth.
In his carefully worded affidavit, Townsend does not attest that the transducer/nebulizer was defective in design. Rather, Townsend opines that the transducer/nebulizer was defective in its application and that an alternative design would have been better.
The LPLA requires a claimant to establish that an alternative design existed at the time the product left the manufacturer's control and would have prevented the alleged injury and that the risk avoided by the alternative design outweighed the burden of its adoption. LSA-R.S. 9:2800.56; Seither, 853 So.2d at 40. Although Townsend opined that an alternative design "would have had less chance to contribute to the Legionella bacteria growth," he did not refer to a specific alternative design that existed at the time the transducer left TDK's control. Moreover, no technical drawings, calculations, scientific study, photographs, publications, or evidence of any kind, as to the eluded to alternative design were presented. Compare, Seither, 853 So.2dat41.
After de novo review, we find that Warren/Sherer failed to meet its burden of proof on the motion for summary judgment in that it failed to establish that it will be able to satisfy its evidentiary burden of proof at trial. See LSA-C.C.P. art. 966C(2); LeBIanc, 15 So.3d at 155. Accordingly, there is no genuine issue of material fact and summary judgment is appropriate.

CONCLUSION
For the reasons stated herein, the judgment of the trial court that granted summary judgment and dismissed the claims against TDK is affirmed. Costs of this appeal are assessed to Warren/Sherer.
AFFIRMED.
NOTES
[1] The judgment before the court also dismissed claims asserted by the plaintiffs against TDK. After finding plaintiffs' appeal of the judgment to be untimely, this court dismissed plaintiffs' appeal. Thus, this appeal concerns only the dismissal of Warren/Sherer's third party claim against TDK.
[2] In its appellate brief, TDK argues that Townsend's affidavit is inadmissible under LSA-C.C.P. art. 967, because it is not based on personal knowledge. The inadequacy of an affidavit is a formal defect that is waived absent the opposing party filing a motion to strike or otherwise objecting. Samaha v. Rau, 07-1726 (La. 2/26/08), 977 So.2d 880, 890. At oral argument, TDK admitted that during proceedings before the trial court, it did not object to the affidavit by filing a motion to strike or otherwise. Accordingly, any objection by TDK was waived. See Samaha, 977 So.2d at 890.