CALLOWAY, J.
|aThe protracted litigation in this case involves mineral rights and royalties associated. with a production well, IP Pet. PPCO No. 1 well, located on a certain tract of land owned by the plaintiffs in Terre-bonne Parish (hereinafter “St. Martin property”). In this appeal, the plaintiffs, Quality Environmental Processes, Inc. (hereinafter “Quality”), Michael X. St. Martin, and Virginia Rayne St. Martin, *1050 appeal a trial court judgment granting partial summary judgment in favor of the defendant, IP Petroleum Company, Inc. (hereinafter “IP Petroleum”), and dismissing with prejudice the claims of the plaintiffs for mineral royalties attributable to production on the IP Pet. PPCO No. 1 well prior to April 1, 2001. In this appeal, we affirm the partial summary judgment in favor of IP Petroleum.
■ In a related appeal, also rendered this date, 2016 CA 0280,- IP Petroleum and International1 Paper Company challenge a trial court judgment on remand which awarded the plaintiffs: (A) $107,612.67 in unpaid mineral royalties; (B) $216,225.34 in statutory penalties pursuant to La. R.S. 31:139; (C)‘ $230,563.83 in .interest from October 31, 2Ó02, on the unpaid royalties and penalties; (D) $138,350.46 representing 25% statutory attorney fees on unpaid royalties, penalties, and interest; and (E) $691,752.30 in damages for intentional tort. The plaintiffs assert their own appeal of the judgment on remand which: (F) dismissed their claim for $817,464,29 in mineral royalties.-
FACTS AND PROCEDURAL HISTORY
The background facts and procedural history of this case are more detailed and fully set forth in the Louisiana Supreme Court’s opinion in Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2013-1582 (La. 5/7/14), 144 So.3d 1011 (rehearing denied July 1, 2014) (hereinafter “Quality I"). For additional background facts, see Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2012-0776, 2013 WL 690535 (La. App. 1 Cm. Feb. 25, 2013). For efficiency, we discuss only the facts and procedural history relevant to the current appeal.
On June 29, 2000, Quality and the St. Martins filed a petition for declaratory judgment and damages against Energy Development Corporation (hereinafter “EDC”), Phillips Petroleum Corporation (hereinafter “Phillips”), Mobil Exploration & Producing U.S., Inc. (hereinafter^ “Mobil”), and IP Petroleum.[2] The plaintiffs alleged they were entitled to receive from the defendants all mineral royalties on production from the IP Pet. PPCO No. 1 well attributable to the St. Martin property from June 29, 1997, through the date the well was plugged and abandoned,[3] The petition sought: (1) a declaratory judgment that the 1966 mineral deed did not create a mineral servitude; (2) an accounting of all pre-1992 royalties from Mobil, Phillips, and IP Petroleum; (3) an accounting of all post-1992 royalties from IP Petroleum and Phillips; (4) payment by Mobil and Phillips to plaintiffs “as damages” double the amount of royalties due and unpaid; (5) cancellation of described mineral leases; and (6) unspecified damages for non-payment of royalties. The trial court granted the plaintiffs leave to amend their suit to add Noble Energy, Inc. (hereinafter “Noble Energy”), as the successor to EDC, as a defendant.
*1051 At the time the instant suit was filed, some $817,464.29 in royalties had been paid by IP Petroleum to Noble Energy and Phillips between June 29, 1997, and April 1, 2001, while the remaining $106,977.66 in royalties (derived from production between April 1, 2001, and September 1, 2001) had been placed in escrow. See Quality I, 144 So.3d at 1018. The instant suit bears trial court docket number 129,412 and was assigned to Division D of the 32nd JDC in Terrebonne Parish, presided over by Judge David W. Areen-eaux. This suit is referred to by the parties as the “Blue Line I” litigation. See Quality I, 144 So.3d at 1018.
Ultimately, Mobil was dismissed from the instant suit. The plaintiffs settled their claims with Phillips in 2001 and with Noble Energy in 2005, who were also dismissed from the suit. See Quality I, 144 So.3d at 1018. In the 2001 and 2005 settlement agreements with Phillips and Noble Energy, the plaintiffs obtained all of the mineral interests in the St. Martin property that had belonged to Phillips and Noble Energy respectively, i.e., the “after-acquired mineral rights.” See Quality I, 144 So.3d at 1018. IP Petroleum is the sole remaining defendant in this suit.
In 2006, the plaintiffs attempted to amend their petition to add as a defendant International Paper Company (the parent company of IP Petroleum) and to assert a claim for tortious conspiracy against the defendants, as well as the attorneys for IP Petroleum, John Y. Pearce and the law firm of Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.C. ¿⅛⅛ Quality I, 144 So.3d at 1018. By judgment rendered February 27, 2007, the trial court denied the plaintiffs’ motion to amend their pleadings to add the above-described defendants. See Quality I, 144 So.3d at 1018.
Thereafter, Quality and the St. Martins filed a second suit against IP Petroleum and International Paper, asserting their claim for unpaid royalties from June 29, 1997, through the date the well was plugged and abandoned. The plaintiffs also sought damages under the Louisiana Unfair Trade Practices Act (hereinafter “LUTPA”) against IP Petroleum, International Paper, and IP Petroleum’s attorneys, Mr. Pearce and the law firm of Montgomery Barnett. See Quality I, 144 So.3d at 1018. The second suit bears trial court docket number 149,973 and was assigned to Division B of the 32nd JDC in Terrebonne Parish, presided over" by Judge John R. Walker. The second suit is referred to by the parties as the “Blue Line II” litigation. See Quality I, 144 So.3d at 1018. The Blue Line II suit is the subject of the related appeal pending- before this court, 2016 CA 0230.[4]
In August 2007, the .plaintiffs filed a motion for partial summary judgment, seeking judgment against IP Petroleum for royalties due since June 29, 1997,[5] IP Petroleum opposed the motion. Following a hearing, the trial court denied the plaintiffs’ motion.
. On November 13, 2008, IP Petroleum filed a motion for partial summary judg *1052 ment, seeking dismissal of the plaintiffs’ claims. Following a hearing, the trial court denied IP Petroleum’s motion in a judgment signed May 8,2009.[6]
On August 29, 2014, IP Petroleum filed a motion for partial summary judgment, seeking dismissal of “all of the claims of the plaintiffs herein to any and all mineral royalties from production prior to April 1, 2001 from the IP Pet. PPCO No. 1 well,” that is, the $817,464.29 in previously-paid royalties by IP Petroleum to Noble Energy and Phillips between the stipulated dates of June 29, 1997, and April 1, 2001. Royalties derived from production between April 1, 2001, and September 1, 2001, in the amount of $106,977.66 and placed in escrow, were not at issue in IP Petroleum’s motion. IP Petroleum prayed for partial summary judgment in its favor and “that plaintiffs’ claims for the sum of $817,464.29 in royalties paid to Phillips and [Noble ^Energy] prior to April 1, 2001 be dismissed, with prejudice and at their costs.” The plaintiffs opposed the motion.
On November 10, .2014, the plaintiffs filed a motion to dismiss IP Petroleum’s motion for partial summary judgment on the grounds that it was filed untimely, based on a previously issued pre-trial order. IP Petroleum opposed the plaintiffs’ motion. Additionally; on November 13, 2014, the plaintiffs filed a' motion requesting ex parte dismissal of the' entire matter based on abandonment. See La. C.C.P. art. 561. The next day, the trial court entered an ex parte order dismissing the case. IP Petroleum subsequently filed a motion to set aside the order of dismissal on November 19, 2014.
Following a hearing, the trial court granted IP Petroleum’s motion to set aside the order of dismissal, denied the plaintiffs’ motion to dismiss IP Petroleum’s motion for partial summary judgment filed August 29, 2014, and took IP Petroleum’s motion for partial summary judgment under advisement. On April 8, 2015, the trial court signed a judgment granting IP Petroleum’s motion for partial summary judgment and dismissing all claims of the plaintiffs against IP Petroleum for previously-paid mineral royalties attributable to production prior to April 1, 2001, with prejudice. The trial court assessed all costs associated with IP Petroleum’s motion for partial summary judgment against the plaintiffs. The trial court also issued written reasons for judgment. On August 28, 2015, the trial court, at the request of IP Petroleum, issued an order certifying the April 8, 2015 judgment rendered in its favor as a final judgment in accordance with La. C.C.P. art. 1915.
Quality and the St. Martins now suspen-sively appeal the April 8, 2015 certified final judgment of the trial court, designating portions of record on appeal.[7] See La. C.C.P. art. 2128; see also Uniform Rules, Courts of Appeal, Rule 2—1.17.
APPELLATE JURISDICTION
Appellate courts have a duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Texas Gas Exploration Corp. v. *1053 Lafourche Realty Co., Inc., 2011-0520 (La. App. 1 Cir. 11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So.3d 698. Our appellate jurisdiction extends to “final judgments.” See La. C.C.P. art. 2083. A judgment must be precise, definite, and certain. Laird v. St. Tammany Parish Safe Harbor, 2002-0045 (La. App. 1 Cir. 12/20/02), 836 So.2d 364, 365. Moreover, a final appealable judgment must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. See Carter v. Williamson Eye Center, 2001-2016 (La.App. 1 Cir. 11/27/02), 837 So.2d 43, 44. These determinations should be evident from the language of the judgment without reference to other documents in the record. Laird, 836 So.2d at 366. In relevant part, a final appealable judgment “must contain appropriate decretal language disposing of or dismissing claims in the case.” State in Interest of J.C., 2016-0138 (La.App. 1 Cir. 6/3/16), 196 So.3d 102, 107.
As an appellate court, we are obligated to recognize any lack of jurisdiction if it exists. This court’s appellate jurisdiction extends to “final judgments,” which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083; see Van ex rel. White v. Davis, 2000-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 483. However, a judgment that only partially determines the merits of an action is a partial final judgment and, as such, is immediately appealable only if authorized by La. C.C.P. art. 1915. Rhodes v. Lewis, 2001-1989 (La. 5/14/02), 817 So.2d 64, 66.
Subpart A of La. C.C.P. art. 1915 designates certain categories of partial judgments as final judgments subject to immediate appeal without the necessity of any designation of finality by the trial court, while Subpart B of La. C.C.P. art. 1915 provides that when a court renders a partial judgment, partial motion for summary judgment, or exception in part, it may designate the judgment as final when there is no just reason for delay. Louisiana Code of Civil Procedure article 1915, in pertinent part, provides:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or in-tervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
I ?(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G).
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands,, issues, or theories against a party, whether in an original *1054 demand, reconventional demand, cross-claim, third-party claim,- or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
The April 8, 2015 judgment at issue herein, which, in part, grants summary judgment in favor of I.P. Petroleum, does not fall within any of the categories identified in Subpart A of La. C.C.P. art. 1915. The judgment does not: (1) dismiss the suit as to any party; (2) grant a motion for judgment on the pleadings; (3) pertain to an incidental demand that was tried separately; (4) adjudicate the issue of liability; or (5) impose sanctions or disciplinary action. Moreover, while the judgment does grant a motion for partial summary judgment, it constitutes a summary judgment under the provisions of La. C.C.P. art. 966(E), which authorizes the grant of a summary judgment “dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.” However, summary judgments granted pursuant to La. C.C.P. art. 966(E) are specifically excluded from the types of partial summary judgments that are immediately appealable under La. C.C.P. art. 1915(A) without the need for a designation of finality. See La. C.C.P. art. 1915(A)(3). Thus, because the judgment is not a final judgment for purposes of an immediate appeal under the provisions of La. C.C.P. art 1915(A), this court’s jurisdiction depends upon whether the judgment was properly designated as a final judgment pursuant to La. C.C.P. art. 1915(B)(1). See La. C.C.P. arts. 1911(B) and 2083.
Article 1915(B) authorizes the appeal of a partial summary judgment as to “one or more but less than all of the claims, demands, issues, or theories” presented where the judgment is designated as a final judgment by the trial court after a determination that there is no just reason for delay. Absent a designation of a judgment as final under La. C.C.P. art. 1915(B)(1), a partial [ «summary judgment may be revised at any time prior to the rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. La. C.C.P. art. 1915(B)(2); MAPP Const., LLC v. Chenevert Architects, 2014-0653, 2014 WL 7332109, at *2 (La. App. 1 Cir. Dec. 23, 2014), writ denied, 2015-0164 (La. 4/17/15), 168 So.3d 397.
However, a trial court’s certification of a partial judgment as final does not make the judgment immediately ap-pealable. Marquez v. Jack Ussery Const. 2006-1852 (La.App. 1 Cir. 6/8/07), 964 So.2d 1045, 1048, writ denied, 2007-1404 (La. 10/12/07), 965 So.2d 400. When reviewing an order designating a judgment as final for appeal purposes, when accompanied by explicit reasons, the reviewing court must determine whether the trial court abused its discretion in certifying the judgment. R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122. Pursuant to Messinger, the following list of non-exclusive factors are to be considered in determining whether a partial judgment should be certified as final:
(1) The relationship between the adjudicated and unadjudicated claims;
*1055 (2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
(4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Messinger; 894 So.2d at 1122. However, in determining whether a partial judgment is a final one for the purpose of an immediate appeal, a court must always keep in mind the historic policies against piecemeal appeals. Davis, 808 So.2d at 483. Article 1915(B) attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review at a time when it best serves the needs of the parties. Thus, in considering whether a judgment is properly designated as a final one pursuant to Article 1915(B), a trial court must take into account judicial administrative interests as well as the equities involved. Messinger, 894 So.2d at 1122.
On August' 28, 2015, the trial court, at the request of I.P. Petroleum, issued an order certifying the April 8, 2015 judgment rendered in its favor as a final judgment in accordance with La. C.C.P. art. 1915. The trial court made an express determination “that there is no just reason for delay for appellate review of its April 8, 2015 judgment” and designated the judgment]^ final in accordance with Article 1915(B)(1). In consideration of the Mes-singer factors, the trial court accompanied its certification with the following reasons:
(1) with the granting of the April 8, 2015 of a summary judgment of dismissal with prejudice of the plaintiffs’ claim to mineral royalties on mineral production prior to April 1, 2001 and with the decision by the Court that the claim to the $107,000 in escrowed royalties on production after April 1, 2001 should be heard by another division of this Court, there is no remaining unadjúdieated issue in this case; (2) the need for appellate review of the dismissal with prejudice of the plaintiffs’ claim to mineral royalties on production prior to April 1, 2001 will not be mooted by any future developments in this Court; (3) the reviewing court will not be obliged to consider this same issue a second time; and (4) there is no just reason for delay in appellate review of the April 8, 2015 judgment, because no further proceedings are necessary in this Court.
After reviewing the trial court’s explicit reasons, we find that the trial court did not abuse its discretion in certifying the, judgr ment as final in the order designating the April 8, 2015 judgment as final for appeal purposes under La. C.C.P. art. 1915(B)(1). Therefore, our jurisdiction extends to this appeal.
ASSIGNMENTS OF ERROR
The plaintiffs assign the following errors on appeal:
1. The trial court erred in vacating the formal order of dismissal previously entered for abandonment of this action pursuant to La. [C.C.P.] art. 561;
2. The trial court erred in not dismissing, as untimely, [IP Petroleum’s] motion for partial summary judgment, the granting of which resulted in entry of the judgment appealed from in this appeal; and
3. The trial court erred in granting the motion for partial summary judgment filed by [IP Petroleum] on August 29, 2014, which resulted, in the [¡judgment dated April 8, 2015 from which this appeal is taken.
*1056 LAW AND DISCUSSION
Assignments of Error 1 and 2
To facilitate our discussion of the errors assigned by the plaintiffs on appeal, we consider the first two errors simultaneously, as the arguments regarding these errors are interrelated. First, the plaintiffs assign error to the trial court vacating its formal order of dismissal entered for abandonment pursuant to La, C.C.P. art. 561. Second, the plaintiffs assign error to the trial court’s denial of their motion to dismiss the motion for partial summary judgment filed by IP|in Petroleum on August 29, 2014 as untimely, based on the deadlines for filing such motions set forth in a pre-trial order previously issued in this matter.[8]
Louisiana Code of Civil Procedure article 561 provides, in pertinent part:
A. (1) An action.. .is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years...
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
Article 561 imposes three requirements to avoid abandonment: (1) a party must take some “step” in the prosecution or defense of the action; (2) the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit; and (3) the step must be taken within three years of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step. Louisiana Dept. of Transp. and Development v. Oilfield Heavy Haulers, L.L.C., 2011-0912 (La. 12/6/11), 79 So.3d 978, 981. Article 561 is operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. La. C.C.P. art. 561(A)(2)(3).
A “step” is a formal action before the court intended to hasten the suit towards judgment or is the taking of formal discovery. A step by one party prevents abandonment as to all of the parties, even though they are not solidarity liable. DOTD v. Oilfield Heavy Haulers, 79 So.3d at 981. Our jurisprudence has uniformly held Article 561 is to be liberally construed in favor of maintaining a plaintiffs suit. Because dismissal is the harshest of remedies, any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. DOTD v. Oilfield Heavy Haulers, 79 So.3d at 981-82. The purpose of La. C.C.P. art. 561 is to dismiss actions which have been abandoned, and the article provides for dismissal of those cases in which a plaintiffs inaction during a legislatively ordained period has clearly demonstrated his abandonment of the case. The article was not intended, however, to dismiss those cases in *1057 which a plaintiff has clearly demonstrated before theln court during the prescribed period that he does not intend to abandon the action. Hutchison v. Seariver Maritime, Inc., 2009-0410 (La.App. 1 Cir. 9/11/09), 22 So.3d 989, 993, writ denied, 2009-2216 (La. 12/18/09), 23 So.3d 946. Given that dismissal is the harshest of remedies, the general rule is that any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. Hutchison, 22 So.3d at 993. Whether or not a step in the prosecution of a case has been taken in the trial court for a period of three years is a question of fact subject to a manifest error analysis on appeal. On the other hand, whether a particular act, if proven, precludes abandonment is a question of law that we review by simply determining whether the trial court’s decision was legally correct. Hutchison, 22 So.3d at 992.
Pre-trial orders are provided for in La. C.C.P. art. 1551, which gives the trial court wide discretion to provide for the pre-trial order and ensuring that it is enforced. The law provides that an orderly disposition of each case and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. Although the trial court is vested with much discretion to amend its pre-trial order, this discretion must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured the preparation and presentation of their cases accordingly. Only upon a showing of an abuse of that discretion should the appellate court intervene. Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 2000-1930 (La.App. 1 Cir. 9/28/01), 809 So.2d 1040, 1055.
This suit was filed on June 29, 2000, more than fifteen years ago. The trial court issued a pre-trial order on March 4, 2005, fixing the trial date in this matter for October 3, 2005. The pre-trial order included numerous deadlines, such as the requirement that any motion for summary judgment must be filed, set for hearing, and served no later than forty-five calendar days prior to the October 3, 2005 trial date, i.e., August 19, 2005. The pretrial order also required that interrogatories, requests for admission, and requests for production and/or inspection, shall not be permitted unless the same is served on any other party within forty-five calendar days of the March 4, 2005 signing of the pre-trial order, i.e., April 18, 2005.
Based on the record, the trial set for October 3, 2005, for which the pre-trial order signed March 4, 2005 was issued, never occurred. Thereafter, in August 2007, the plaintiffs filed a motion for partial summary judgment, seeking judgment against IP Petroleum for royalties due |12since June 29, 1997, which IP Petroleum opposed. Following a hearing, the trial court denied the plaintiffs’ motion. Then on November 13, 2008, IP Petroleum filed a motion for partial summary judgment, seeking dismissal of the plaintiffs’ claims.[9] Following a hearing on March 27, 2009, the trial court granted the parties until April 9, 2009, to submit additional memo-randa, after which the trial court took the matter under advisement. On April 13, 2009, the plaintiffs filed a memorandum in opposition to IP Petroleum’s motion for partial summary judgment.[10] The trial *1058 court denied IP Petroleum’s motion for partial Summary judgment in a judgment signed May 8, 2009.[11] No further action appears in the record of this case until August 29, 2014, when IP Petroleum filed another motion for partial summary judgment.
The plaintiffs argue that this action was abandoned on April 13, 2012, three years after the plaintiffs filed them memorandum m . opposition to IP Petroleum’s motion for summary judgment, on April 13, 2009. IP Petroleum argues, however, that on April 5, 2012, IP Petroleum directed two interrogatories and one request for production of documents to the plaintiffs, which is a formal discovery request.[12] We note the plaintiffs conceded in their motion for formal order of dismissal and in the supporting memorandum that IP Petroleum directed a formal discovery request to them on April 5, 2012.
Pursuant to La. C.C.P. art. 561(B), “[ajny formal discovery as authorized by this Code and served on all parties whether or not filed of record” is a step in the prosecution or defense of an action. When IP Petroleum propounded a formal discovery request on April 5, 2012 to the plaintiffs, IP Petroleum interrupted the running of the abandonment period, which began on April 13, 2009 for purposes of this discussion, when the plaintiffs filed a memorandum in opposition in the record, and caused it to run anew. Therefore, the trial court properly vacated its previously entered order of dismissal based on abandonment. The plaintiffs’ first assignment of error is without merit.
Furthermore, because a trial never occurred on the scheduled trial date of October 3, 2005, the deadlines for discovery and the filing of motions for summary judgment contained | ^therein essentially became “moot” pending the setting of another trial date and/or issuance of another pre-trial order by the trial court. Therefore, IP Petroleum’s filing of a motion for partial .summary judgment on August 29, 2014 was not untimely based on the deadlines set forth in the pre-trial order, signed March 4, 2005.[13] The trial court committed no error in denying the plaintiffs’ motion to dismiss. The plaintiffs’ second assignment of error is without merit.
Assignment of Error 3
After adequate discovery, a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judg *1059 ment as a matter of law. La; C.C.P. art. 966(B)(2) and (C)(1) (prior to amendment by 2016 La. Acts, No. 422, effective January 1,2016).[14] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. C.C.P. art. 966(A)(2).
The mover bears the burden of proving' that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. C.C.P. art. 966(C)(2) (prior to amendment by 2016 La. , Acts, No. 422, effective January 1, .2016).[15] If the moving party points out that there, is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2) (prior to amendment by 2016 La. Acts, No. 422, effective January 1, 2016). If the nonmoving party fails to make this requisite showing, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422, effective |14 January 1, 2016). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party’s claim, the burden never shifts to the adverse party, and the'mover is not entitled to summary judgment. LeBlanc v, Bouchereau Oil Co., Inc., 2008-2064 (La.App. 1 Cir. 6/8/09), 15 So.3d 152, 155, writ denied, 2009-1624 (La. 10/16/09), 19 So.3d 481.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v, Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765-66. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. East Tangipahoa Development Company, LLC v. Bedico Junction, LLC, 2008-1262 (La.App. 1 Cir. 12/23/08), 5 So.3d 238, 243-44, writ denied, 2009-0166 (La. 3/27/09), 5 So.3d 146. Be *1060 cause it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Pumphrey v. Harris, 2012-0405 (La.App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
A summary judgment may grant less than all of the relief prayed for by the respective parties. However, a partial summary judgment must grant at least some of the relief prayed for. See La. C.C.P. art. 966(A); La. C.C.P. art. 1915(A)(3); State v. Exxon Corp., 95-2370 (La.App. 1 Cir. 6/28/96), 676 So.2d 788, 789. A motion for partial summary judgment may not be used merely to decide an issue or strike down a theory of the case, without granting or denying any part of the relief claimed by any party. See State v. Exxon Corp., 676 So.2d at 789; see also Coleman v. Robicheaux Air Boats, Inc., 94-2139 (La.App. 1 Cir. 6/23/95), 658 So.2d 807, 810. The relief prayed for means any relief sought by the defendant as a defendant, more often] 1fi dismissal of the plaintiffs suit in whole or in part, with prejudice. Beard v. Assumption Parish Police Jury, 413 So.2d 923, 925 (La. App. 1 Cir.), writ denied, 420 So.2d 444 (La. 1982).
On August 9, 2014, IP Petroleum filed a motion for partial summary judgment, a list of essential legal elements and undisputed material facts, and a memorandum. IP Petroleum argued that “all of the claims of the plaintiffs herein to any and all mineral royalties from production prior to April 1, 2001 from the IP Pet. PPCO No. 1 well” that is, the $817,464.29 in previously-paid mineral royalties by IP Petroleum to Noble Energy and Phillips between June 29, 1997, and April 1, 2001, should be dismissed based on the May 7, 2014 ruling of the supreme court in Quality I (appealed in the Blue Line II litigation). In that decision, the supreme court, affirming a previous ruling of this court, ruled that the plaintiffs did not acquire any mineral rights in the St. Martin property in connection with the 1992 purchase of the property by the St. Martins. See Quality I, 144 So.3d at 1026-27. However, the supreme court affirmed this court’s remand of the case “for consideration of any royalty payment issues stemming from the after-acquired rights, if any, arising out of the 2001 and 2005 settlements.” See Quality I, 144 So.3d at 1027. IP Petroleum argued that the 2001 and 2005 settlement agreements did not give the plaintiffs any after-acquired rights to the royalties attributable to the property prior to April 1, 2001, and as such, there were no disputed issues of material fact regarding royalties prior to April 1, 2001.[16] IP Petroleum prayed for partial summary judgment in its favor and “that plaintiffs’ claims for the sum of $817,464.2[9] in royalties paid to Phillips and [Noble Energy] prior to April 1, 2001 be dismissed, with prejudice and at their costs.” In support of its motion for partial summary judgment, IP Petroleum submitted the following exhibits:
(A) copy of the Louisiana Supreme Court’s opinion in Quality I;
(B) copy of the April 1, 2001 settlement agreement between the plaintiffs and Phillips;
(C) copy of the December 13, 2005 confidential settlement agreement be *1061 tween the plaintiffs and Noble Energy;
(D) copy of the November 30, 2007 judgment of the trial court, denying the plaintiffs’ motion for summary judgment filed August 6, 2007;
(E) copy of the trial court’s December 10, 2007 reasons for judgment, issued in conjunction with the November 30, 2007 judgment; and
lifl(F) copy of the December 19, 2005 mineral deed from Noble Energy to the plaintiffs. (Exhibits A-F, loose papers bundle).
The plaintiffs opposed the motion for partial summary judgment. In support of their opposition, the plaintiffs attached Exhibit 1, the original affidavit of A.J. Gray, III, dated November 11, 2014, and particular correspondence attached thereto.
Following a hearing, the trial court ruled in favor of IP Petroleum and against the plaintiffs. In its written reasons, the trial court stated:
After a thorough review of the evidence offered at the hearing on February 13, 2015, and after careful consideration of the arguments of counsel, the court has found that no genuine issue of material fact remains unresolved in this case with regard to the plaintiffs’ claims for royalties prior to April 1, 2001. The settlement documents referred to above do not give the plaintiffs any “after-acquired rights” to the royalties attributable to the property in question before that date. As a result, the court has granted IP Petroleum’s motion for partial summary judgment and has dismissed with prejudice the plaintiffs’ claims to those royalties.
The first settlement mentioned by the Supreme Court in its May 7, 2014, opinion, is evidenced in part by a “Settlement Agreement” by and between the plaintiffs and Phillips. Pursuant to this agreement, Phillips agreed to “convey or assign” to the plaintiffs, among other things, all “mineral interests or mineral rights” in and to the land which is the subject of the present litigation. This conveyance or assignment was accomplished by an act of Assignment, Transfer and Conveyance signed by all the parties with an effective time of 7:00 a.m. on April 1, 2001. There is nothing in the Settlement Agreement or the Assignment, Transfer and Conveyance to reasonably suggest that Phillips transferred to the plaintiffs any right, interest, or claim to royalties attributable to production from the property before 7:00 a.m. on April 1, 2001. To the contrary, paragraph 2(d) of the Assignment, Transfer and Conveyance specifically excludes any assignment, transfer, or conveyance of the following described property to the plaintiffs, and specifically reserves the same to Phillips, as assign- or:
Any and all rights and claims arising, accruing or existing in Assignor prior to the Effective Time including, but not limited to, any and all contract rights, claims, penalties, receivables, revenues, recoupment rights, recovery rights (including gas imbalances), accounting adjustments, mispayment, erroneous payments or other claims of any nature relating to any period pri- or to the Effective Time.... ” (Ex. B, p. 3 of Assignment)
Under this provision of the Assignment, Transfer and Conveyance, it is patently obvious that the plaintiffs did not obtain pursuant to their settlement with Phillips, any interest in the royalties paid or payable to Phillips and attributable to production from the land at issue at any time prior to April 1, 2001.
*1062 The second settlement mentioned by the Supreme Court in its May 7, 2014, opinion, is evidenced by a “Confidential Settlement Agreement” by and between the plaintiffs and others on the one hand, and Noble Energy, Inc., successor to EDC, on the other. Each of the plaintiffs signed this agreement on December |1713, 2005, and Noble Energy, Inc. signed the same on December 19, 2005.
In pertinent part, this agreement obligated Noble Energy, Inc., to execute in favor of the plaintiffs a mineral conveyance document substantially in the form attached to the agreement as Exhibit C. By “Mineral Deed” signed by each of the parties on the same day each of them signed the Confidential Settlement Agreement, Noble Energy, Inc., conveyed to the plaintiffs “all of Noble’s right, title and interest in all mineral rights of every kind and character” in and under the land at issue. Neither the Confidential Settlement Agreement nor the Mineral Deed state any effective date or otherwise refer to any particular period of time to which they apply with regard to mineral production and royalty payment due as a result thereof. The Mineral Deed does not specifically refer to any rights of any of the parties to royalty payments received by EDC or Noble Energy, Inc., before the parties executed the Mineral Deed. On its face, the Mineral Deed was intended to have prospective effect only.
The court’s conclusion in this regard is bolstered by the terms and conditions of the Confidential Settlement Agreement. By its terms, this agreement was intended to “compromise and settle” the claims between the parties as described in the agreement, or as described in the instant lawsuit, and including “all claims which could have been brought, relating in any way to the ownership of minerals underlying” the property at issue in this case. Because no temporal limit is expressed in the agreement, the only reasonable conclusion is that all claims between the parties relative to mineral royalty payments as of the date of the execution of the agreement were included within the terms of the settlement and that any claims by the plaintiffs to mineral royalty payments thereafter would be rooted in the Mineral Deed executed contemporaneously therewith.
Based on the foregoing, the court is of the opinion that the plaintiffs have no claim to mineral royalties attributable to production from the property in question prior to April 1, 2001, arising out of any title or rights acquired by them in the 2001 and 2005 settlements described above. There is no unresolved genuine issue of material fact that could dictate a contrary finding.
Following our de novo review of the record, we agree with the findings of the trial court. Our review of the evidence admitted for purposes of the motion shows that there is no genuine issue as to material fact and that IP Petroleum is entitled to judgment as a matter of law. Specifically, there is no genuine issue as to material fact that neither the 2001 nor the 2005 settlement agreement gives the plaintiffs any claim to interest in royalties, attributable to production from the land at issue, at any time prior to April 1, 2001. Therefore, partial summary judgment in favor of IP Petroleum, and against Quality and the St. Martins was properly granted, and the plaintiffs’ claims against IP Petroleum for previously-paid mineral royalties attributable to production prior to April 1, 2001, were properly dismissed, with prejudice.
| ¡¡^DECREE
Based on the foregoing, the April 8,2015 certified final judgment of the trial court is hereby affirmed. All costs of this appeal *1063 are assessed against the plaintiffs, Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin.
AFFIRMED.

. In a related suit, Mandalay Oil & Gas, L.L.C. v. Energy Development Corporation, Michael X. St. Martin, Virginia Rayne St. Martin, and . Quality Environmental Processes, Inc., bearing trial, court docket number 132, 981 (transferred to Division D of the 32nd JDC in Térrébonne Parish, presided over by Judge David W. Arceneaux), Mandalay Oil & Gas, L.L.C, initiated a concursus proceeding to determine the proper distribution of mineral royalties attributable to production from a producing unit also located on the St. Martin Property. Although consolidated with the instant suit, the Mandalay Oil case was settled and dismissed.

. The parties herein jointly stipulated that the plaintiffs’ claims against IP Petroleum for royalties accrued prior to June 29, 1997, were prescribed.

. IP Petroleum filed a motion to consolidate the instant suit, trial court docket number 129,412, assigned to Division D of the 32nd JDC in Terrebonne Parish, presided.over by Judge David W. Arceneaux, with the Blue Line II litigation, trial court docket number. 149,973, assigned to Division B of the 32nd JDC in Terrebonne Parish, presided over by Judge John R,’Walker. The plaintiffs opposed consolidation. The trial court ultimately denied the motion to consolidate.

. The plaintiffs specifically declared their forbearance with regard to other elements of their original claims, including claims for damages and attorney's fees.

. In that same judgment, the trial court also denied a motion to strike filed by the plaintiffs in January 2009.

. IP Petroleum filed a motion, opposed by the plaintiffs, to combine the oral arguments in this appeal with the oral arguments in the ■related appeal—2016 CA 0230—and to have the appeals heard by the same panel. • If so ordered, the defendants requested the parties be permitted twenty-five minutes of argument time per side. We granted the motion in part to allow the two related appeals to be argued before the same panel, but denied IP Petroleum's request to combine oral arguments of the two appeals and issue additional argument time.

. The trial court’s denial of the plaintiffs’ motion to dismiss IP Petroleum’s motion for summary judgment as untimely is interlocutory in nature and generally not appealable. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings, in addition to review of the final judgment. Cajun Constructors, Inc. v. EcoProduct Solutions, LP, 2015-0049 (La.App. 1 Cir. 9/18/15), 182 So.3d 149, 155, writ denied, 2015-1908 (La. 11/20/15), 180 So.3d 1287.

. This motion is not part of the designated record on appeal.

. This opposition is not part of the designated record on appeal. We note that the plaintiffs admit to filing the opposition on April 13, *1058 2009 in their motion for and memorandum in support of a formal order of dismissal pursuant to La. C.C.P. art. 561. We also note that the plaintiffs' April 13, 2009 filing of their opposition is four days past the deadline for additional memoranda, which the trial court set as due on April 9, 2009.

. In thátsame judgment, the trial court also denied a motion to strike filed by the plaintiffs . in January 2009.

. The discovery propounded by IP Petro- ' leum to the plaintiffs on April 5, 2012 is not part of the designated record on appeal. We note, however, the plaintiffs concede IP Petroleum propounded the discovery on April 5, 2012 in their motion for and memorandum in support of a formal order of dismissal pursuant to La. C.C.P. art. 561.

.We also note that the plaintiffs filed a ■ motion for partial summary judgment on August 6, 2007, which is almost two years after the deadline provided for in the pre-trial order. Based on their arguments presented on appeal, the plaintiffs themselves violated the pre-trial order. We also note that it is the plaintiffs, not the defendant, who are trying to dismiss as abandoned their own lawsuit

. An appellate court is bound to adjudge a case before it in accordance with the law exis.ting at the time of its decision. Segura v. Frank, 630 So.2d 714, 725 (La. 1994). Louisiana Code of Civil Procedure article 966 was amended by 2015 La. Acts'422, § 1; however, the new version of Article 966 does not apply to this case as the Amendment did not become effective until January 1, 2016. Here, the pen-dency of the instant appeal on the effective date of 20 i 5 La. Acts 422 results in the application of the prior version of Article 966 to the instant matter. Now, see La. C.C.P. art. 966(A)(3).

. Now, see La. C.C.P. art. 966(D)(1).

. As noted by the trial court in its written reasons, "[t]here are royalties attributable to production on and after April 1, 2001, but the court has not been asked to address the ownership of those royalties.” (Emphasis added.) Thus, this opinion does not address the royalties derived from production between April 1, 2001, and September 1, 2001, in the amount of $106,977.66, and which have been placed in escrow.