McCLENDON, J.
In this suit on a promissory note, the third-party defendant appeals the trial court judgment in favor of the third-party plaintiff for the amount due on the note. For the reasons that follow, we affirm.
*480 FACTS AND PROCEDURAL HISTORY
This litigation arises out of a dispute between a land developer, Belhaven Trace Limited Partnership (Belhaven), and Rad-Ton, L.L.C. (Rad-Ton). In September 2010, Belhaven contracted with Rad-Ton to grade lots and do other surface preparation work for a subdivision development on approximately eleven acres of land in Baton Rouge, for a contract price of $637,383.70. After the work was completed and allegedly accepted by Belhaven, a balance of $104,403.68 remained unpaid to Rad-Ton. On December 28, 2011, Roger Kahao signed a promissory note due on demand for that amount.
On October 27, 2014, Belhaven filed a Petition for Damages against Rad-Ton in which it asserted defective construction work.[1] Rad-Ton answered the petition, alleging affirmative defenses and asserting a reconventional demand, in which it contended that it had completed all work under the contract, which was accepted by Belhaven, that Belhaven had defaulted on the promissory note executed for the remaining balance due under the construction contract, and that the sum of $100,903.79 remained due and owing to Rad-Ton. In the same pleading, Rad-Ton also made a third-party demand against Mr. Kahao, alleging that Mr. Kahao executed the note in his individual capacity making him personally liable to Rad-Ton for the sums due thereunder. Belhaven and Mr. Kahao each answered the reconventional demand and third-party demand, urging that Rad-Ton failed to state a cause of action against them. Belhaven stated that there was no authorization by the partners of Belhaven for the execution of the note on behalf of Belhaven. Additionally, Mr. Kahao acknowledged that there was no language in the note indicating that Belhaven was a maker on or executed the note.
On July 7, 2016, Rad-Ton, as the third-party plaintiff, filed a motion for summary judgment on the promissory note, contending that it was entitled to judgment as a matter of law against Mr. Kahao, in accordance with the terms of the note, in the amount of $75,043.57, together with interest, late fees, attorney fees, and costs. The motion was heard on September 19, 2016, and the trial court granted the motion. On October 25, 2016, the trial court signed a judgment and designated the judgment as final under LSA-C.C.P. art. 1915B, finding that there was no just reason for delay. Mr. Kahao filed a motion for new trial, which was denied at the conclusion of a hearing on January 30, 2017, and he appealed.
APPELLATE JURISDICTION
On May 30, 2017, this court, ex proprio motu, issued a show cause order, noting that, from the record, it appeared that the motion for new trial had not been timely filed, thus rendering the appeal of the October 25, 2016 judgment untimely. On September 15, 2017, the rule to show cause was referred to the panel to which the appeal was assigned.
Generally, LSA-C.C.P. art. 2121 requires that a party file an order for appeal within the delay set forth by LSA-C.C.P. art. 2087 or LSA-C.C.P. art. 2123. Article 2087 provides that an appeal that does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of the expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by LSA-C.C.P. arts. 1974 and *481 1811, if no application has been filed timely. Article 1974 provides that "[t]he delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913." As noted in the show cause order, the filing of an untimely motion for new trial does not extend the delay for filing an appeal. According to the order, since the notice of judgment was sent on October 28, 2016, Mr. Kahao had until November 8, 2016, to file a motion for new trial, and the motion for new trial, filed on November 10, 2016, appeared to be untimely.
The record shows that the judgment was signed on October 25, 2016, and notice of the judgment was mailed on Friday, October 28, 2016. While the show cause order indicates that the two Saturdays and two Sundays were counted as legal holidays, Mr. Kahao points out that two legal holidays were omitted in the calculation: All Saints Day on November 1 and Election Day (the first Tuesday after the first Monday in November in even-numbered years) on November 8. We agree. See LSA-R.S. 1:55. Mr. Kahao additionally argues that his motion for new trial was filed on the sixth day, as it was fax filed on November 9, 2016, and the original filed on November 10, 2016, attaching to his Brief in Response to Order Regarding Dismissal of Appeal copies of a receipt confirming the filing by facsimile transmission on November 9, 2016, and a check indicating payment on November 10, 2016, for the filing of the motion. Upon our review of the record, we find that the motion for new trial was timely filed, whether it was filed on November 9th or 10th. Accordingly, as the motion for new trial was denied on January 30, 2017, the instant appeal, filed on March 28, 2017, was a timely devolutive appeal.
However, in his first two assignments of error, Mr. Kahao argues that the trial court erred in designating the judgment as final and finding that there was no just reason for delay. As an appellate court, we are obligated to recognize any lack of jurisdiction if it exists. This court's appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. LSA-C.C.P. arts. 1841 and 2083. See also Van ex rel. White v. Davis, 00-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 483. However, a judgment that only partially determines the merits of an action is a partial final judgment and, as such, is immediately appealable only if authorized by LSA-C.C.P. art. 1915. Quality Environmental Processes, Inc. v. Energy Development Corporation, 16-0171 (La.App. 1 Cir. 4/12/17), 218 So.3d 1045, 1053. Article 1915 authorizes the immediate appeal of final partial judgments and provides, in pertinent part:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
* * *
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).[2]
* * *
*482 B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
Mr. Kahao maintains that this piecemeal appeal will not resolve the other issues in the lawsuit, as the third-party demand against him on the note is inextricably intertwined with other issues still pending. He asserts, particularly, that Rad-Ton's reconventional demand against Belhaven on the same note is still pending. He also argues that the alleged balance due is subject to being eliminated or substantially reduced if Belhaven prevails on the merits of its petition for damages for defective construction work. Therefore, Mr. Kahao contends that the judgment at issue was improperly designated as a final judgment pursuant to Article 1915B. To the contrary, Rad-Ton asserted in its opposition to the motion for new trial that out of an abundance of caution it had requested that the trial court judgment contain language making its finality absolutely clear, although it asserted such certification was not necessary under Article 1915A, as the judgment was a final partial judgment.
While we agree with Mr. Kahao that the summary judgment at issue does not terminate the entire litigation, it does resolve all claims, causes of action, issues, and defenses as between Rad-Ton and Mr. Kahao, and the summary judgment at issue is a final judgment governed by the provisions of LSA-C.C.P. art. 1915A(3). Consequently, the trial court's certification of the judgment as final for appeal was unnecessary.[3]
SUMMARY JUDGMENT
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966A(2). Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court's determination of the issues. Mabile's Trucking, Inc. v. Stallion Oilfield Services, Ltd., 15-0740 (La.App. 1 Cir. 1/8/16), 185 So.3d 98, 102, writ denied, 16-0251 (La. 4/4/16), 190 So.3d 1207.
In support of its motion for summary judgment, Rad-Ton submitted the affidavit of its manager, Raymond Loup, together with a copy of the promissory note and amortization schedule. Mr. Loup attested that he requested a meeting with *483 Mr. Kahao to discuss payment of the outstanding balance due under the contract and that he and Mr. Kahao met on December 28, 2011, and negotiated a document entitled Promissory Note payable to Rad-Ton for the principal sum of $104,403.68. Mr. Loup further stated that Mr. Kahao signed the note in his personal capacity and that, in exchange for receipt of the interest-bearing note, Rad-Ton delayed seeking immediate payment of the contract balance and did not file a lien on the project to secure payment per the contract. Mr. Loup also acknowledged that Rad-Ton received one payment in the amount of $30,000.00 on January 17, 2012, but that further demands for payment had been to no avail.
Mr. Kahao filed an opposition to the motion for summary judgment and attached his affidavit, in which he stated that he was the manager of Belhaven and that on September 30, 2010, he signed a construction contract on behalf of Belhaven with Rad-Ton. Mr. Kahao attested that when he met with Mr. Loup regarding the balance due under the contract, all of the construction work on the project had been completed. Additionally, he was under heavy pressure to finalize the closing on the loan for financing of the project, and he signed the promissory note under duress because he was threatened with a lawsuit, which would have prevented the final loan closing and would have bankrupted the project. He stated that at that time there was no indication of any problems or defects with the construction work done by Rad-Ton on the project. Mr. Kahao attested that after Rad-Ton completed its work, Belhaven experienced serious problems with drainage that required in excess of $250,000.00 to correct. He attached an engineering report that indicated that the drainage problems were caused by Rad-Ton's failure to properly grade the lots, streets, and other surface areas in accordance with the elevations provided for in the plans and specifications for the project. Lastly, Mr. Kahao stated that he signed the note in error, because at the time he signed it he had no knowledge that there was any problem or defect in the construction work done by Rad-Ton.
Under our Civil Code, a contract is defined as an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. LSA-C.C. art. 1927. A contract has the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. LSA-C.C. art. 1983.
Consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. However, error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949 ; see also LSA-C.C. arts. 1967, 1823, and 1824. Cause is the reason why a party obligates himself, and without a lawful cause, an obligation cannot exist. LSA-C.C. arts. 1966 and 1967 ; Peironnet v. Matador Resources Co., 12-2292 (La. 6/28/13), 144 So.3d 791, 807.
Error, which vitiates consent, can manifest itself in two ways: mutually, i.e., both parties are mistaken, or unilaterally, i.e., only one party is mistaken. However, in both situations, the error for which relief may be granted (1) must affect the cause of the obligation, and (2) the other party must know or should have known "the matter affected by error was the cause of the obligation for the party in error; that is, that it was the reason he consented to bind himself." See LSA-C.C. art. 1949, Revision Comments (b) and (c).
*484 In other words, both parties can individually be mistaken, in which case both parties are clearly aware the matter in error was the cause of their mutual obligations, thus vitiating the consent of both parties; or one party can be mistaken and that mistake will vitiate consent if the other party knows or should have known. Peironnet, 144 So.3d at 807.
In this matter, Mr. Kahao argues that implicit in his agreement to sign the note was the assumption that Rad-Ton had performed all of its obligations under the construction agreement in a good and workmanlike manner and that there were no defects in that work. Thus, he argues, he signed the note in error because at the time of its execution he had no indication that Rad-Ton had not performed its work in accordance with the plans and specifications. However, it is undisputed that Mr. Kahao signed the note to keep Rad-Ton from filing a lien or a lawsuit, either of which it was legally entitled to do, which would have prevented Belhaven from securing permanent financing for the construction project. Rad-Ton agreed not to file a lien and relied on the note for payment in order to allow Belhaven to secure a permanent loan.
Further, with regard to Mr. Kahao's argument that he signed the note in error due to defective construction work, entitling him to a setoff, compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. See Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1 Cir. 2/16/01), 808 So.2d 428, 431. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. LSA-C.C. art. 1893. A claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards. Buck's Run Enterprises, Inc., 808 So.2d at 431-32. Mr. Kahao cannot plead an offset of a liquidated sum under a note with an unliquidated contract claim by Belhaven against Rad-Ton. Furthermore, the claims against Rad-Ton for defective construction work were brought by Belhaven and not by Kahao individually. Thus, we find that Mr. Kahao failed to present sufficient evidence to show that he signed the promissory note in error.
Nor does the record establish that Mr. Kahao signed the note under duress so as to vitiate his consent. See LSA-C.C. art. 1959. A threat of doing a lawful act or a threat of exercising a right does not constitute duress, although a threat of doing an act that is lawful in appearance only may constitute duress. See LSA-C.C. art. 1962 ; Grezaffi v. Smith, 93-1696 (La.App. 1 Cir. 6/24/94), 641 So.2d 210, 214. More specifically, the threat to file a lawsuit for the purposes of collecting sums owed does not amount to duress. Cooper v. Southern Hunting Products, L td. , 39,166 (La.App. 2 Cir. 12/22/04), 891 So.2d 91, 96.
Upon our de novo review, we find that no genuine issues of material fact exist, and Rad-Ton is entitled to judgment as a matter of law. Mr. Kahao admitted that Belhaven did not sign the promissory note. Although he alleged that his consent in signing the note in his individual capacity was vitiated because of error or duress, the record unequivocally established that there was no error in the cause of the contract and the alleged duress was not of the type sufficient to vitiate his consent. Accordingly, the trial court properly granted the motion for summary judgment.
CONCLUSION
For the foregoing reasons we affirm the trial court's October 25, 2016 judgment *485 granting summary judgment in favor of the third-party defendant, Rad-Ton, L.L.C. and against the third-party defendant, Roger Kahao, in the amount of $75,043.57. All costs of this appeal are assessed against Mr. Kahao.
AFFIRMED.

The record indicates that the petition was filed by facsimile transmission on October 27, 2014, and the original filed on November 3, 2014. See LSA-R.S. 13:850.

Article 966E provides:
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.

Because we hold that the summary judgment was final pursuant to Article 1915A, we need not discuss Mr. Kahao's argument that he was denied constitutional due process in that he did not receive adequate notice of the finality of the judgment. Nevertheless, we note that on October 13, 2016, counsel for Mr. Kahao sent a letter to the trial court objecting to the form of the judgment submitted by counsel for Rad-Ton. After considering same, the trial court signed the judgment designating it as a final judgment. Thereafter, Mr. Kahao again raised the designation of the judgment in his motion for new trial. After a hearing and considering the argument of both sides, the trial court denied the motion. Mr. Kahao was clearly afforded an opportunity to be heard.